IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  vs.<br><br>JOSE HIDALGO,<br><br>    Defendant. | Case No. 07-10179-01-JTM |

**MEMORANDUM AND ORDER**

Presently before the court are Defendant Jose Hidalgo's motions to suppress (Dkt. Nos. 38 & 39). The motions were fully briefed, and the court conducted a hearing on the matter, where it denied the motions from the bench. The following order serves to memorialize those findings.

**I. Facts**

The following facts are alleged in the various pleadings before the court. In December 2007, Jose Hidalgo, Errol Ibarra and Juan Huereca were charged in a superseding indictment in Count 1 of unlawfully, knowingly, and intentionally possessing with the intent to distribute more than 150 pounds of marijuana. Hidalgo is also charged in Count 2 of unlawfully, knowingly, and intentionally distributing cocaine.

1

On March 14, 2004, Hidalgo was driving a Lincoln Navigator on Highway 50 in Harvey County, Kansas, when he was stopped by the police and taken into custody. Police discovered 195 pounds of marijuana in an accompanying vehicle and were aware of the presence of drugs in the car because of a tip on March 11, 2004, from the Otero County Narcotics Unit (OCNU) in New Mexico, who in turn knew about the drugs from information received from a confidential informant who had been hired to drive the drugs. Working with OCNU, Wichita police tracked the truck filled with the drugs, and observed Ibarra, Huereca, and Hidalgo make contact with each other and the confidential informant. After a few days of watching the various vehicles, the officers decided to stop both a Lincoln Navigator, operated by Hidalgo and Huereca, and a maroon and white truck driven by Ibarra but registered to Hidalgo. After the stop, the officers found 195 pounds of marijuana in the load vehicle driven by Ibarra. Although there were no drugs found in the Navigator, the officers did recover a Coleman cooler which smelled like marijuana, and a set of scales, a marker, four packages of cling wrap, two boxes of lawn bags, wrapping tape, and boxes.

Almost two years later, in May 2006, Sedgwick County sheriff's deputies executed a search warrant on a residence jointly occupied by Hidalgo and his girlfriend, Brinda Miller. The search warrant was procured based from material containing traces of cocaine, which police found in the trash outside the house. During the search of the house, the officers located approximately $38,000 in cash, including approximately $35,000 which was wrapped in plastic and hidden between the mattress and box springs of the bed in the master bedroom.

After the residence was searched, the officers obtained a warrant to install a GPS system on Hidalgo's 1998 Lincoln Navigator.

## II.  Motions to Dismiss

Hidalgo's first motion to suppress (Dkt. No. 38) moves to suppress any and all results of any Global Positioning Systems on Hidalgo or his vehicle.  Because the United States indicated both in its brief and at the suppression hearing that it does not plan to use any evidence derived from the GPS device during the trial, the motion is denied as moot.

Hidalgo's second motion to suppress (Dkt. No. 39) seeks to suppress the stop and subsequent search of Hidalgo's vehicle.  Hidalgo argues that the stop was not justified at its inception because he had not committed any traffic infractions, and thus any evidence seized during that traffic stop must be suppressed.

The government responds that due to the information from the confidential informant, as well as the many hours of surveillance conducted, the officers had probable cause to believe that the defendants had committed a felony offense, and thus lawfully arrested them without an arrest warrant.  *See United States v. Watson*, 423 U.S. 411, 418 (1976) (holding as valid a warrantless arrest when officer had reasonable grounds to believe that a felony has been or is being committed).  Further, the government argues that because the arrest of Hidalgo was supported by probable cause, the subsequent search of the passenger compartment of the vehicle he was driving was likewise lawful.  Finally, the government argues that it clearly had probable cause to support the stop of the load vehicle, and inevitable discovery would have lead it to Hidalgo.

Law enforcement officers may lawfully arrest persons without an arrest warrant when the officer has probable cause to believe the persons have committed a felony offense.  *Watson,* 423 at 418 (noting that an offense occurs in the presence of the officer when the officer, with the aid of all of his senses, determines an offense has been committed.).  Probable cause to conduct a

warrantless arrest exists when police have, at the moment of arrest, knowledge of facts and circumstances grounded in reasonably trustworthy information and sufficient in themselves to warrant a belief by a prudent person that an offense is being committed by the person to be arrested. *Beck v. Ohio,* 379 U.S. 89, 91 (1964).

The arrest of Hidalgo occurred after the tips received from the confidential informant, as well as numerous hours of surveillance, which, taken together, provided probable cause for the police to believe that the defendants committed a felony. Because the arrest of Hidalgo was supported by probable cause, the subsequent search of the passenger compartment of the vehicle he was driving was likewise lawful. *New York v. Belton,* 453 U.S. 454, 462 (1981). Thus, notwithstanding the fact that there was not a warrant, the motion to suppress is denied.

IT IS ACCORDINGLY ORDERED this 25th day of April, 2008 that Jose Hidalgo's motions to suppress (Dkt. Nos. 38 & 39) are denied.

s/ J. Thomas Marten  
J. THOMAS MARTEN, JUDGE